UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Stacey A.,[1]

        Plaintiff,

v.

Frank Bisignano[2],
*Commissioner of Social Security*,

        Defendant.

Case No. 24-cv-1310 (DJF)

**ORDER**

      Pursuant to 42 U.S.C. § 405(g), Plaintiff Stacey A. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her applications for Disabled Widow(er)'s Benefits ("DWB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Decision"). This matter is before the Court on Plaintiff's Motion For Summary Judgment ("Motion") (ECF No. 18) and Defendant's brief. (ECF No. 21.)[3] Because the Appeals Council improperly disregarded new evidence that was both material and related to the time-period under review, the Court grant's Plaintiff's Motion in part, denies Defendant's request for relief, and remands this matter pursuant to sentence four of 42

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] Frank Bisignano became Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), the Court substitutes Frank Bisignano as Defendant here.

[3] Plaintiff's Motion does not conform with current rules, effective December 1, 2022, which direct that Social Security Actions brought under 42 U.S.C. § 405(g) should be "presented for decision on the parties' briefs," rather than summary judgment motions. Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), Rule 5. Plaintiff's procedural error does not affect the Court's analysis.

U.S.C. § 405(g), for further administrative proceedings consistent with this Order.

## BACKGROUND

### I.     Plaintiff's Claim

Plaintiff applied for DWB and SSI on May 5, 2021. (Soc. Sec. Admin. R. (hereinafter "R.") 147, 148.)[4] At that time she was 50-years old with one year of college and prior work experience as a call agent, cashier, and warehouse associate. (R. 147, 148, 383, 384.) Plaintiff alleged she became disabled on January 1, 2020 (R. 147, 148), resulting from blurry vision, type two diabetes, tuberculosis, back pain, heart issues, chest palpitations, and symptoms from the human papillomavirus (R. 382).

### II.    Regulatory Background

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and

---

[4] The Social Security administrative record (R.) is filed at ECF No. 14. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers in citing to the Administrative Record. All other citations refer to ECF docket and page numbers.

laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). The claimant must then establish at step two that she has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 416.920(a)(4)(iii).[5]

If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).

If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

Moreover, to qualify for DWB at fifty years old, the claimant here must have had a

---

[5] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R Part 404, Subpart P, App. 1.

3

disability that started within seven years after her spouse died.  20. C.F.R. § 404.335(c)(1).  The claimant may be considered disabled only if she has a physical or mental impairment that: (1.) is so severe as to ordinarily prevent a person from working; and (2.) must have lasted or be expected to last for a continuous period of at least 12 months.  20. C.F.R. § 404.335(c)(1).

**III.    Procedural History**

The Commissioner denied Plaintiff's applications for DWB and SSI initially (R. 171-172, 176-177) and on reconsideration (R. 201-202, 209-211).  On January 12, 2023, at Plaintiff's request (R. 211-212), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's applications (R.77-102).  Plaintiff and a vocational expert testified at the hearing.  (R. 77-78.) Plaintiff was represented by an attorney.  (R. 77.)

After the hearing, the ALJ found that Plaintiff satisfied the non-disability eligibility requirements for DWB (R. 35).  He then determined that Plaintiff has non-severe myopia, astigmatism, presbyopia, hepatic steatosis, latent tuberculosis without treatment, and carpal tunnel syndrome.  (R. 36.)

In regard to Plaintiff's carpal tunnel syndrome, the ALJ observed that, despite alleging disability in January 2020, Plaintiff did not receive hand or wrist treatment until almost two years later.  (R. 36, citing R. 753, 776.)  He also stated that there was "no objective evidence that limitations from the impairment will persist for 12 months now that treatment has begun."  (R. 36.) The ALJ noted that when Plaintiff started treatment in late 2021, she reported numbness and tingling in her arms, and an exam showed decreased grip, grasp, and pinch strength (R. 36, 41, citing R. 776).  The ALJ also noted that Plaintiff did not seek additional treatment until December 2022, when she reported joint pain during a telemedicine visit (R. 36, citing R. 1039), and shortly after, a physical exam showed normal bilateral hand x-rays (R. 36, citing R. 1036).

The ALJ further remarked that Plaintiff received a left carpal tunnel steroid injection and discussed more aggressive treatment options if her symptoms warranted them. (R. 36, citing R. 1089.)

On October 1, 2021, Dr. Grace Totoe authored a medical opinion that Plaintiff had decreased grip, grasp, and pinch strength and recommended related limitations (R. 754-755). The ALJ did not find Dr. Totoe's opinion persuasive, however, arguing that "it was not clear how" how any condition "would limit claimant's grip and pinch strength so significantly." (R. 41.) The ALJ thus concluded that Plaintiff's carpal-tunnel syndrome was non-severe. (R. 36.) He further stated that even if the impairment was severe, limiting Plaintiff's RFC to light and sedentary work—which require frequent handling and fingering—would be sufficient. (R. 36.)

The ALJ also determined that Plaintiff suffers from multiple physical and mental impairments, which at least in combination are severe: obesity, thoracic degenerative disc disease, borderline intellectual function, history of learning disorder, depression, anxiety, and diabetes mellitus. (R. 36.) The ALJ found Plaintiff has moderate limitations in interacting with others, and in understanding, remembering, or applying information; and has mild limitations in concentrating, persisting, or maintaining pace, and in adapting or managing herself. (R. 37-38.) But the ALJ found Plaintiff's mental impairments do not severely limit any area of broad functioning. (R. 37-38.) The ALJ concluded that Plaintiff's impairments, alone or in combination, do not meet or medically equal any impairment in the Listing. (R. 36-39.)

At step four of the sequential analysis, the ALJ thoroughly catalogued the mental and physical health evidence in the record (R. 39-44) and determined that Plaintiff has:

> the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to hazards, such as unprotected heights. She can persist in simple, routine tasks. She can engage in superficial interactions with others, such as taking instructions, relaying information, and transferring material,

5

    but would not consistently be able to engage in more sophisticated interactions such as negotiating or resolving customer complaints.

(R. 39.)

Next, the ALJ found Plaintiff had past relevant work in "customer service" (DOT #249.362-026, sedentary, at specific vocational preparation ("SVP") level 4). (R. 44.) The ALJ then determined that Plaintiff is unable to perform her past relevant work because it exceeds her RFC. (R. 44.)

The ALJ next evaluated whether Plaintiff can perform any other jobs that exist in significant numbers in the national economy. (R. 45.) Based the vocational expert's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff is able to perform such other jobs, including: (1.) "Routing Clerk" (DOT #222.687-022, at light, SVP 2, with approximately 140,000 jobs in the national economy; (2.) "Mail Clerk" (DOT #209.687-026, at light, SVP 2, with approximately 11,000 jobs in the national economy; and (3.) "Merchandise Marker (DOT #209.587-034, at light, SVP 2, with approximately 137,000 jobs in the national economy. The ALJ concluded on that basis that Plaintiff was not disabled during the period under review, January 1, 2020—the alleged onset of Plaintiff's disability—through the date of his Decision, May 3, 2023. (R. 45-46.)

Plaintiff appealed the ALJ's Decision on December 3, 2023 (R. 1-7) and asked the Appeals Council to consider additional evidence dated May 18, 2023 to May 23, 2023 ("Additional Evidence") (R. 19-29) related to her upper extremity impairments, including carpal tunnel syndrome. The Appeals Council declined to consider the Additional Evidence because it was outside the time period that the ALJ's Decision addressed and denied Plaintiff's request to review the Decision. (R. 1-7.) This lawsuit followed.

6

## DISCUSSION

### I. Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates. He does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical

7

bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

The Court also may examine the Appeals Council's refusal to consider additional evidence and its subsequent denial of review. *See, e.g.*, *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (holding that failure to consider additional evidence "may be a basis for remand by a reviewing court") (citing *Williams v. Sullivan*, 905 F.2d 214, 216–17 (8th Cir. 1990)); *Keeton v. Department of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("When the Appeals council refuses to consider new evidence submitted to it and denies review, that decision is also subject to judicial review because it amounts to an error of law."); *see also Gelner v. Berryhill*, No. 17-cv4202 (JNE/KMM), 2018 WL 3946520, *3-4 (D. Minn. July 24, 2018), *report and recommendation adopted*, 2018 WL 3946476 (D. Min. Aug. 16, 2018) (reviewing Appeals Council's failure to consider new evidence and denial of review); *Stimpson v. Berryhill*, No. 17-cv-824 (HB), 2018 WL 1440336, at *4 (D. Minn. Mar. 22, 2018) (reviewing Appeals Council's denial of review); *Laveau v. Astrue*, No. 11-cv-505 (SRN/LIB), 2012 WL 983598, at *17-18 (D. Minn. Feb. 14, 2012) (same); *Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251–52 (N.D. Al. 2001) (collecting cases).

The Appeals Council must grant a request to review a case if: (1.) it receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision; (2.) there was a reasonable probability the evidence would change the outcome of the decision; and (3.) the claimant showed good cause for not informing the Commissioner about or

submitting the evidence as described in 20 C.F.R. § 404.935. *See* 20 C.F.R. §§ 404.970(a)(5), (b), 416.1470(a)(5), (b); *see also Box*, 52 F.3d at 171 (quoting *Williams*, 905 F.2d at 216–17).

Evidence is new when it is "more than merely cumulative of other evidence in the record." *Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir. 2000). And evidence is material when it is "relevant to [the] claimant's condition for the time period for which benefits were denied." *Id.* District courts review de novo whether the evidence at issue is new, material, and related to the relevant time period. *Box*, 52 F.3d at 171. The exact timing of the additional evidence "is not dispositive of whether evidence is material." *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990).

When new evidence is submitted to the Appeals Council, it becomes part of the administrative record. *See Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992) (citing *Williams v. Sullivan*, 905 F.2d 214, 217 (8th Cir. 1990)). "If the Appeals Council does not consider the new evidence, a reviewing court may remand the case to the Appeals Council if the evidence is new and material." *Nelson*, 966 F.2d at 366 (citing *Williams*, 905 F.2d at 217). The Court may also remand the matter directly to the ALJ to properly consider the new evidence in light of the record as a whole. *Gartman v. Apfel,* 220 F.3d 918, 922 (8th Cir.2000). However, if "the Appeals Council considers the new evidence but declines to review the case, [the Court will] review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision." *Nelson*, 966 F.2d at 366 (citing *Williams*, 905 F.2d at 217).

**II.     Analysis**

Plaintiff asks the Court to remand this matter for a new administrative hearing because the Appeals Council erred when it failed to consider her Additional Evidence. Plaintiff further argues

the ALJ's findings were erroneous insofar as: (1.) he found Plaintiff's bilateral upper extremity neuropathies non-severe; (2.) he overlooked some of Plaintiff's mental impairments; and (3.) he did not properly evaluate Dr. Totoe's medical opinion. (ECF No. 19 at 17-31; ECF No. 22 at 1-17.) Defendant argues the Court lacks jurisdiction to review the Appeal's Council's denial of review (ECF No. 21 at 12-15), and otherwise asks the Court to affirm the ALJ's Decision on the ground that substantial evidence supports it (*id.* at 15-19).

### A.     The Appeals Council's Review

Plaintiff appealed the ALJ's Decision on December 3, 2023. (R. 8-11.) She argued the ALJ's Decision was based on factual and legal error and that he failed to properly evaluate her upper extremity neuropathies. (R. 8-11.) In support, Plaintiff submitted the Additional Evidence, consisting of abnormal electromyography ("EMG") and nerve conduction velocity ("NCV") studies conducted fifteen days after the ALJ's Decision. These studies showed Plaintiff had "[s]evere bilateral ulnar neuropathies across the elbow as seen in cubital tunnel syndrome. Moderate bilateral median neuropathies across the wrist as seen in carpal tunnel syndrome. Likely diffuse axonal polyneuropathy." (R. 26.) The Additional Evidence also noted physical exam findings of "bilateral first dorsal interosseous weakness" and indicated "bilateral hand numbness (left worse than right) over one year" (R. 26).

But the Appeals Council declined to consider the Additional Evidence. It explained, "The Administrative Law Judge decided your case through May 3, 2023. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 3, 2023." (R. 2.) The Appeals Council ultimately "found no reason under [its] rules to review the Administrative Law Judge's decision" and thus finalized the Decision. (R. 1.)

10

### 1. Jurisdiction

Defendant argues the Court lacks jurisdiction to review the Appeals Council's denial of review because it is not a final agency action. (ECF No. 21 at 13.) He relies on *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). *Browning* held that the court did not have jurisdiction to review the merits of the Appeals Council's denial of review because the Appeals Council in that case considered the Plaintiff's newly-submitted evidence and, having reviewed the evidence, found it would not have altered the ALJ's decision. *See Browning*, 958 F.2d at 822. But *Browning* does not apply here because the Appeals Council did *not* consider Plaintiff's Additional Evidence. Defendant does not offer a basis to disregard substantial authority, including post-*Browning* Eighth Circuit case law, supporting the conclusion that courts have authority to review whether the Appeals Council's failure to consider newly-submitted evidence was erroneous. *See, e.g.*, *Box*, 52 F.3d at 171; *Williams*, 905 F.2d at 216-17; *Keeton*, 21 F.3d at 1066; *Gelner*, 2018 WL 3946520, at *3-4; *Stimpson*, 2018 WL 1440336, at *4; *Laveau*, 2012 WL 983598, at *17-18; *Fry*, 209 F. Supp. 2d at 1251–52. Based on these precedents, the Court concludes that it has jurisdiction to review the Appeals Council's decision and determine whether the Appeals Council should have considered Plaintiff's Additional Evidence.

### 2. Additional Evidence

The Appeals Council was required to consider the Additional Evidence if it was new, material, related to the period on or before the Decision, reasonably might have changed the Decision, and supported by good cause for Plaintiff's failure to submit it timely under the

11

applicable regulations. *See* 20 C.F.R. §§ 404.935, 404.970(a)(5), (b); *see also Box*, 52 F.3d at 171 (quoting *Williams*, 905 F.2d at 216–17).

The Appeals Council did not consider Plaintiff's Additional Evidence because it determined that the Additional Evidence was not related to the period prior to the ALJ's decision. (R. 2.) The Court disagrees. Although the Additional Evidence consists of two studies conducted fifteen days after the ALJ's Decision, it is new information that relates to Plaintiff's upper extremity impairments, which the ALJ considered, but found to be non-severe. That the Additional Evidence postdates the Decision by fifteen days is of little consequence. *Williams*, 905 F.2d at 216. The Additional Evidence does not establish a "later-acquired disabilit[y] or subsequent deterioration of a previously non-disabling condition." *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997). Rather, it discusses a medical condition that Plaintiff originally presented to the ALJ, but provides more specific details regarding the severity of the impairment. Any suggestion that Plaintiff's chronic condition suddenly worsened during the brief, fifteen-day period between the Decision and the studies is implausible. The Court thus concludes Additional Evidence appropriately relates to the time period within the ALJ's Decision.

Defendant also appears to argue the Additional Evidence is not material because it would not have altered the outcome of this case when other substantial evidence supports the ALJ's Decision. (ECF No. 21 at 14-19.) It is not the Court's role to speculate how the Additional Evidence might affect the overall outcome of this case. Because the Appeals Council did not consider the Additional Evidence, the Court's analysis is limited to whether it should have done so. *Nelson*, 966 F.2d at 366 (citing *Williams*, 905 F.2d at 217) (when addressing newly submitted evidence, the Court determines whether substantial evidence supports the Decision as a whole only if the Appeals Council actually considered the newly submitted evidence). Here, the Court must

only determine whether the Appeals Council improperly overlooked evidence it should have considered. The Court finds that it did.

The Additional Evidence provides additional information about the severity of Plaintiff's upper extremity impairments—which the ALJ determined were non-severe. Specifically, the Additional Evidence shows, "[s]evere bilateral ulnar neuropathies across the elbow as seen in cubital tunnel syndrome. Moderate bilateral median neuropathies across the wrist as seen in carpal tunnel syndrome. Likely diffuse axonal polyneuropathy." (R. 26.) This information is plainly material to any finding regarding the severity of Plaintiff's upper extremity impairments. It is also relevant to the ALJ's evaluation of Dr. Totoe's medical opinion. The ALJ discounted her opinion, in part because he found no apparent cause for Plaintiff's alleged hand weakness. (R. 41.) The Additional Evidence thus may affect the ALJ's assessment of the persuasiveness of Dr. Totoe's findings. Furthermore, a vocational expert testified at Plaintiff's hearing that limiting Plaintiff to just "occasional" handling and fingering would preclude all the jobs she identified. (R. 100.) The Additional Evidence thus would directly impact the ALJ's disability determination if the ALJ were to find that Plaintiff requires greater handling and fingering limitations than the current RFC allows.

Neither party addressed the good cause requirement under 20 C.F.R. § 404.970(b). (*See* ECF Nos. 18, 21, 22.) The Appeals Council also failed to make any specific determination as to good cause. (*See* R. at 1-7.) Other Courts have found that when the good cause determination is ambiguous, but—as in this case—the requirements under Section 404.970(a)(5) are met, remand is appropriate. *See, e.g.*, *Shawn C. H. v. Kijakazi*, No. 22-cv1937 (ECW), 2023 WL 7174073, at *6 (D. Minn. September 7, 2023) (remanding case to Commissioner when Appeals Council did not make good cause determination); *Hennemann v. Kijakazi*, No. 4:21-cv-00038-NCC, 2022 WL

13

4093938, at *4 (E.D. Mo. Sept. 7, 2022) (same); *Lucas v. Saul*, No. 2:18 CV 45 CDP, 2019 WL 4221519, at *3 (E.D. Mo. Sept. 5, 2019) (same).  The Court thus concludes that, absent a clear good cause determination—or any findings on that issue at all—remand is appropriate.

The Court therefore vacates the Decision and remands this matter, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Order.  42 U.S.C § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").  On remand, the Court ALJ shall: (1.) consider whether the Additional Evidence alters his conclusion that Plaintiff can perform jobs that exist in significant numbers in the national economy; (2.) re-weigh the persuasiveness of Dr. Totoe's medical opinion in light of the Additional Evidence; (3.) correct factual and legal inaccuracies, as described below; and (4.) recall a vocational expert for testimony to the extent necessary to address a new hypothetical based on any modified RFC.  *Gartman,* 220 F.3d at 922 (remanding case with improperly overlooked new, material, timely information directly to ALJ).

### B.     Other Issues

#### 1.     Factual and Legal Errors

Plaintiff argues remand is also appropriate because the ALJ's Decision is factually and legally incorrect.  (ECF No. 19 at 21-25.)  Specifically, the ALJ determined Plaintiff's carpal tunnel syndrome was non-severe because Plaintiff did not seek treatment for her upper bilateral impairments until late 2021 and did not seek treatment again until December 2022.  (R. 36.)  But the record reflects that, during her December 2021 medical appointment, Plaintiff reported she had been treated for carpal tunnel previously, a medical provider prescribed gabapentin to treat it, and she planned to have a nerve test but it was cancelled due to the COVID-19 pandemic.  (R. 791.)

The record thus contradicts the ALJ's statement that Plaintiff did not receive treatment for carpal tunnel syndrome until December 2021. The Court directs the ALJ to address these facts on remand.

The ALJ further supported his determination that Plaintiff's carpal tunnel syndrome was non-severe on the ground that there was "no objective evidence that limitations from the impairment will persist for 12 months now that treatment has begun." (R. 36.) But the law does not base the twelve-month duration requirement on when a Plaintiff starts *treatment*. Rather, a claimant may be considered disabled if a severe *impairment* that prevented her from performing substantial gainful activity has lasted, or is expected to last, for a continuous period of at least 12 months. 20. C.F.R. § 404.335(c)(1). A November 7, 2023 SSA Policy Interpretation Ruling clearly states that the 12-month period may be measured "from any date" when the claimant's impairment became disabling. SSR 23-1p: TITLES II AND XVI: Duration Requirement for Disability, https://www.ssa.gov/OP_Home/rulings/di/01/SSR2023-01-di-01.html, last accessed July 16, 2025. The Court directs the ALJ to apply the correct standard on remand when addressing the severity of all Plaintiff's claimed impairments.

### 2. Mental Impairments

Finally, Plaintiff argues the ALJ's failure to address her schizophrenia spectrum disorder and posttraumatic stress disorder in his Decision establishes an independent basis for remand. (ECF No. 19 at 25-27.) The Court disagrees. An ALJ does not err by failing to identify a specific impairment at step two of the sequential analysis unless that impairment is "separate and apart" from other listed impairments. *Gregory v. Comm'r Soc. Sec. Admin.*, 742 F. App'x 152, 156 (8th Cir. 2019) (citing *Gragg v. Astrue*, 615 F.3d 932, 939 (8th Cir. 2010)). The record reflects that, during a single medical appointment in December 2022, a provider listed schizophrenia spectrum

15

and post-traumatic stress disorders in her diagnostic impressions of Plaintiff. (R. 1040-1041, 1049.) Elsewhere in the record, however, Plaintiff denied hallucinations, illusions, delusions, or symptoms of posttraumatic stress disorder. (*See, e.g.*, R. 761-762.) It is the ALJ's job to consider all the evidence and resolve any apparent conflicts in the record. 42 U.S.C. § 405(g). Here, the ALJ's Decision included a detailed account of Plaintiff's mental impairments, with a particular focus on her complaints of emotional fluctuations, memory/concentration deficits, social anxiety, panic, and history of hallucinations. He then considered them alongside other, essentially unremarkable objective psychological findings, her conservative course of treatment, and evidence that she declined to use psychotropic medications. (R. 39- 40, 42-43, citing R. 90, 470, 477, 537, 602, 762, 769-770, 786, 790, 956, 1041-1043, 1053, 1078-1079). The Court finds that the ALJ appropriately considered the entire record and reconciled abnormal and normal mental health findings, and that he did not err by failing to specifically mention Plaintiff's alleged schizophrenia spectrum and post-traumatic stress disorder diagnoses when he evaluated symptoms related to those disorders.

## ORDER

Based on all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. [18]) is **GRANTED IN PART**;

2. Defendant's Request for Relief (ECF No. [21]) is **DENIED**;

3. The Commissioner's denial of benefits is reversed and this matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C § 405(g) for further administrative proceedings consistent with this Order; and

4. This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 23, 2025								*s/ Dulce J. Foster*
											DULCE J. FOSTER
											United States Magistrate Judge